ANN FITZGERALD, Appellant, v. CHARLES QUIRK QUANN, Respondent.

*Slander — in action for slanderous words spoken by a wife the husband must be made a defendant — Code of Civil Procedure, sec. 450.*

When an action is brought to recover damages for slanderous words uttered by a married woman her husband must be joined as a defendant.

*It seems,* that the provisions contained in section 450 of the Code of Civil Procedure, that "in an action or special proceeding a married woman appears, prosecutes or defends alone, or joined with other parties as if she was single," was only intended to relieve her from the common-law disability of defending separately when joined with her husband, and to allow her to appear and defend *sui juris* as if she were unmarried.

APPEAL from an order made at the Livingston Circuit setting aside a verdict in favor of the plaintiff, and dismissing the complaint as to the defendant Charles Quann, and from the judgment entered thereon.

The action was brought to recover damages for slanderous words alleged to have been spoken by the wife of the respondent, Charles Quirk Quann. He and his wife were joined as defendants. The plaintiff had a verdict at the Livingston Circuit against both of the defendants. Subsequently, on a motion made on the judge's minutes, the verdict was set aside and the complaint dismissed as against the husband, with costs, the court holding that the husband was improperly joined with his wife as a defendant.

*S. Hubbard,* for the appellant.

*James Wood,* for the respondent.

BRADLEY, P. J. :

The question presented is whether the husband may or may not properly be joined as a defendant with his wife in an action for the tort of the latter, having no relation to her separate property. This depends upon the interpretation given to section 450 of the Code of Civil Procedure, which provides that "in an action or special proceeding a married woman appears, prosecutes or defends, alone or joined with other parties as if she was single. It is not necessary or proper to join her husband with her as a party in any action or special proceeding affecting her separate property." The learned justice at Special Term in support of his conclusion sought the reason of the rule which at common-law made the husband a

necessary party defendant with the wife in actions for her torts, and held that the reason having ceased, the legislative intent fairly derived from that section and consummated by it was to require, that the wife for the purposes of all actions to which she may be a party be treated as a *feme sole.*

It has not been the policy in this State for courts to move any in advance of the clearly expressed legislative purpose to remove the common-law disabilities, rights or liabilities of coverture, or to modify the marital relations (*Tait* v. *Culbertson,* 57 Barb., 9; *Bertles* v. *Nunan,* 92 N. Y., 152), while in some of the States the courts have determined that the reason for the common-law ule relating rto the marriage relation in certain respects had been removed by statute, and therefore the rule itself had ceased to exist although the legislature had not by any act in terms abrogated it. And notably in Illinois it was held that the effect of the statute giving the wife the right to acquire, own, control and dispose of property, etc., free from any interference of her husband, was to relieve him from liability to be joined as a defendant with her in actions for her personal torts. (*Martin* v. *Robson,* 65 Ill., 129; 16 Am. R., 578.)

At common law the husband and wife were treated as one person and as having but one will between them, and that in the husband. By the marriage the wife was deemed to surrender to him absolute power of disposition of her personal property, and to collect her choses in action and appropriate to his own use the proceeds, and only such of them as he did not collect were retained by her if she survived him. She could not, at law, make any contract or alone be a party to an action, nor in any manner, except through her husband, defend one in which she was joined as defendant. Of this he had entire control; yet she, as well as he, was charged in execution issued on the judgment recovered. (*McKinstry* v. *Davis,* 3 Cow., 339.) In all actions for debts owing to and by the wife *dum sola,* and for torts committed by and against her before and during coverture, brought while the marriage relation continued, the husband and wife had to be joined as plaintiffs or defendants; and in all those cases if the husband died before judgment, leaving the wife, the actions survived to her; but if she died leaving him surviving they abated (except that he might, as administrator, con-

tinue actions so brought by him and wife to recover such debts). (*Checchi* v. *Powell*, 6 Barn & Cres., 253; *Gage* v. *Reed*, 15 Johns., 403; *Williams* v. *Kent*, 15 Wend., 361; *Goulding* v. *Davidson*, 26 N. Y., 606; *Ball* v. *Bullard*, 52 Barb., 141, 143, 144.) And the same rule would apply to rights of action not commenced for such causes. But if judgment was recovered against husband and wife in any such action his liability to pay it was fixed, and his estate was charged after his death with its payment. (*Heard* v. *Stamford*, 3 P. Wms., 409, 411; *Cole* v. *Shurtleff*, 41 Vt., 311; *Burton* v. *Burton*, 5 Harring., 441.) And he was without relief in equity. (*Heard* v. *Stamford, supra*.) This liability of the husband continued only during coverture. (*Heud* v. *Briscoe*, 5 C. & P., 484.)

This was the general situation at law before the first of the series of statutes known as the married women acts was passed in this State. Those of 1848 and 1849 removed the disability of married women so far as to enable them to acquire, own and dispose of property the same as if unmarried, but as incident to that right she could not alone sue at law (*Morgan* v. *Andrut*, 18 How., 371), until section 114 of the Code of Procedure was given by the amendment of 1849. Then followed the acts of 1860 and 1862, which enlarged their property rights, enabled them to carry on business, appropriate the proceeds of their services, etc., to sue and be sued in all matters relating to their separate property, and to sue for injuries to their persons or character the same as if they were single. And although for all torts relating to her property she could sue and be sued alone (*Rowe* v. *Smith*, 55 Barb., 417; affirmed, 45 N. Y., 230; *Baum* v. *Mullen*, 47 N. Y., 577), and for personal wrongs committed against her she could sue alone (*Ball* v. *Bullard*, 52 Barb., 141), yet she could not be sued alone for any personal tort committed by her, but the common law in that respect still remained in force without the aid of the restrictive clause of section 114 of Code of Procedure. (*Tait* v. *Culbertson*, 57 Barb., 9.) The purpose of that section was only to remove disability, and beyond that it was merely declaratory of the common law and did not restrict its operation. But it is said that the husband was joined as defendant with the wife as matter of necessity merely (which involves to some extent the reason for the common-law doctrine which required it), and that both the necessity and the reason are gone, and by the force of section 450

of Code of Civil Procedure he cannot be so joined. When the reason upon which a rule of law is founded is clearly defined and is removed the rule itself disappears. (Brown's Legal Maxims [5th ed.], 133, marg., 118; *Berley* v. *Rampacher,* 5 Duer, 186.) But the maxim *cessante ratione legis cessat ipsa lex* cannot be applied to the common-law rule which required the husband to be joined with the wife as defendant in such case. If it might be deemed an arbitrary one, the inquiry into the reason of it involves the consideration of all the rights, obligations, duties, liabilities and disabilities given by the common law to the marital relation. And so far as observed, no writer has yet authentically furnished satisfactorily all the reasons which may have influenced the various conditions of coverture imposed by the common law. It cannot be said that the reasons have ceased to exist in the sense which is required to enable the courts to declare that the rule does not remain. (*Brown* v. *Clark,* 77 N. Y., 369.)

While the common law is not so rigid a system as to wholly disregard changed circumstances of society, and has sufficient elasticity to develop new principles to meet new cases, the courts do not assume to abrogate a well settled principle of it. And whether reasons exist for a change or modification of the common law in any particular is a question peculiarly for the legislature. To justify the conclusion that the provisions of section 450 of the Code of Civil Procedure either permit a married woman to be sued alone, or require that the husband should not be joined with her in an action like this, that statute must, by fair interpretation of its terms, be sufficient to so permit or require. This the language does not necessarily do if there is any substantial difference in effect between appearing and defending alone, and being sued alone. By the learned opinion at Special Term it appears that the position taken was that there was no liability of the husband in such case. If that is entirely correct, then if the terms of the statute permitted it, it would in effect also require that the wife be a sole defendant, for in such case the right would not survive the necessity to join him. The contention of the defendant's counsel is that the purpose of this section was to sweep away completely the common law rule requiring the husband to be joined; that the husband, by that rule, was in no sense liable for the personal torts of the wife, and that

he was joined by mere necessity occasioned by disability of the wife, and reference is made to *Capel* v. *Powell* (17 C. B. [N. S.], 743), decided in 1864, where an action was brought after dissolution of marriage against those who had been husband and wife for a personal tort committed by the latter during coverture. The court held that the action could not be maintained against him; that his liability to be sued in such cases continued only during coverture, and ERLE, C. J., in his opinion, said: "Where the husband is joined for conformity, if he dies the action goes on against the wife, but if the wife dies the action abates. It is clear to demonstration, therefore, that there is no cause of action against the husband. He is not liable for the wrong, but is joined only by reason of the universal rule that the wife during coverture cannot be either a sole plaintiff or a sole defendant."

There is no occasion to criticise the decision of the Court of Common Pleas made in that case, nor the opinion of the chief judge so far as related to the necessity of the existence of coverture to permit the husband to be joined, and to the matter of survivorship. They are well established propositions, but farther than that it perhaps was not necessary for him to go for the purposes of that case. (See cases above cited and *Head* v. *Briscoe*, 5 C. & P., 484; *Wright* v. *Leonard*, 11 C. B. [N. S.], 265, 266; *Rowing* v. *Manly*, 49 N. Y., 201.) Although the personal tort of the wife is not that of the husband and no imputation for the wrong is against him, the ground upon which his liability to be joined with her as defendant was placed is not very clearly defined. Judge KENT says that the husband is liable for the torts of the wife (2 Kent's Com., 149), and such is generally the expression given by text and judicial writers on the subject. Mr. Bishop, in his work "On the Law of Married Women," says, that to say he is liable for her torts is an inaccurate statement; that the liability is that of the wife, not his, and that he is joined because the suit cannot be maintained against the wife alone. (Vol. 2, § 254; see, also, Cooley on Torts, 115.) Bacon states it, that the husband is "answerable for all her torts and trespasses during coverture, in which cases the action must be joint against them both." (Bac. Abr., Baron & Feme, L.) The fact that "the husband and wife are one person in law, and her legal existence suspended during the marriage" (1 Bl. Com., 442), may

have been a reason of his liability, such as it is. As has been already observed, precisely the same character of liability during the marriage relation existed of the husband for debts contracted by the wife *dum sola* as for her personal torts. It rested on the same doctrine and the effect of survivorship the same. His relation to those debts at common law, and as bearing upon the question under consideration, may perhaps be somewhat illustrated by authority.

In *Miles* v. *Williams* (1 P. Wms., 249, 257) it was held that the discharge of the husband in bankruptcy during coverture discharged the debt of the wife contracted by her before marriage. The bankrupt act, under which he was discharged, provided that " the bankrupt shall be discharged from all debts *by him due and owing* at the time he became bankrupt." In *Lockwood* v. *Salter* (5 Barn. & Adol., 303) decided in 1833, the same was held (S. C., 2 Nev. & M., 255 ; see Bright on Husband and Wife, 3) ; but in *Sparkes* v. *Bell* (8 Barn. & Cress., 1 ; S. C., 2 Man. & Ry., 124), decided in 1828, it was held that after judgment against husband and wife, recovered on an *ante*-nuptial debt of the latter, the discharge of the husband under the insolvent act did not entitle the wife, taken in execution with him, to be discharged from custody unless it appeared that she had no separate property, and the court there said " the debt in question was originally the debt of the wife, by the marriage it became the debt of the husband and wife."

In *Vanderheyden* v. *Mallory* (1 N. Y., 452, reversing 3 Barb. Ch., 9), it was held that the discharge of the husband under the general bankrupt act of 1841 discharged during coverture the debt of his wife contracted before the marriage. The provision of that act was that the bankrupt shall be entitled to full discharge from all *his* debts. That suit was brought in chancery to reach some separate property of the wife. The court held that it could not be maintained and dismissed the bill. It is difficult to reconcile the theory expressed by the *dictum* of the chief judge in *Capel* v. *Powell*, that the husband is not liable, with the doctrine and consequences applied as appears by adjudications. The solution of the situation seems to be that by the common law the husband during coverture was liable for the torts and ante-nuptial debts of the wife. That such liability did not necessarily rest on him as debtor, nor did it impute to him any personal wrong on his part, but his

liability was as husband and because he was such; and it is not important that such liability was arbitrarily imposed by law, and continued only during coverture, and that it afforded no vested right before judgment against him to recover, after dissolution in any manner of the marriage relation.

That it was nothing short of such liability, and more than a mere necessity to join him as party, is evidenced by the fact that when in such a case a judgment is recovered against him, he and his estate after his death are chargeable with its payment, and without any relief as against the separate estate of the wife; also that his discharge in bankruptcy bars action during coverture. The tort is personal to the wife only; the right of action for it abates with her death, and survives against her alone on the death of the husband or other termination of coverture. The right of the person aggrieved by her tort was at common law to prosecute to judgment the husband while he remained such, and to collect of him the judgment. It is difficult by any qualification to treat that less than a right while the rule of the common law remains. (*Hill* v. *Duncan*, 110 Mass., 238, 239.) The statute in question (Code Civil Pro., § 450), does not provide either that the husband may not be joined as defendant with the wife or that she may be sued alone. The amendment or annex of 1879 to this section does not restrict the import of the original section, nor does it by relation or implication entitle it to any new or different meaning. While all statutes on this subject are *in pari materia* and to be treated as one, in aid of the interpretation of each, they are not as a whole exceptions to the rule which requires that those in derogation of the common law are to be construed as innovations on it, no further than they by express terms or by fair implication declare. (*Perkins* v. *Perkins*, 62 Barb., 531.) The common law unity of husband and wife and disabilities by coverture still exist in many respects in this State, and in all respects except so far as the legislative purpose to modify and remove them has been expressed by statute. (*Bertles* v. *Nunan*, 92 N. Y., 152.)

In the provision of the section that "a married woman appears or defends alone," etc., a purpose may be seen to remove her disability, when the husband is joined with her as defendant, to control the defense in her own behalf, which she could not do at common law;

although in a proper case she might go into equity where severalty of husband and wife was recognized and obtain leave to defend. This section (450) gives her the right to do so at law without the aid of a court of equity. (*Janinski* v. *Heidelberg*, 21 Hun, 439.) The interpretation of that section has had consideration in some other cases. In *Hoffman* v. *Lachman*, the Special Term of New York Marine Court; in *Berrien* v. *Steel*, the Special Term in First Department (1 N. Y., Civ. Pro. R., 278, 279 notes); in *Fitzsimons* v. *Harrington* (Id., 360), the Genesee Special Term, and in *Trebing* v. *Vetter* (2 McCarthy Civ. Pro. R., 391.) The Genera Term of Brooklyn in City Court held that the common law rule in question was not removed by the Code of Civil Proceedure (§ 450). In *Muser* v. *Miller* (65 How., 283; 3 N. Y. Civ. Pro. R., 388) the Special Term of the New York Superior Court, on a motion to vacate an order of arrest, FREEDMAN, J., held that the common-law rule in that respect was abrogated by operation of that section, and approved the decision and opinion of the Special Term in the case at bar. And the Oneida Special Term, in *Laude* v. *Smith* (6 N. Y. Civ. Pro. R., 51), did the same. But *Muser* v. *Miller* has since been overruled in that respect by the General Term of the same court in *Muser* v. *Lewis* (not reported),* and SEDGWICK, C. J., in delivering the opinion, held that the husband was properly joined as defendant, and that the provisions of the first part of section 450 had no relation to the way in which the wife might be sued, but merely relieved her from the common-law disability of defense where her husband was joined with her as defendant, and permitted her to appear and defend *sui juris* as if she were unmarried.

No legislative intent is found in that section to require that a married woman be made a sole defendant in an action like this. The statute of Massachusetts (St., 1871, chap. 312), under which the decisions there are made, completely abrogates this common-law rule. (*Hill* v. *Duncan*, 110 Mass., 238; 118 id., 58.)

From the views above given the conclusion follows that the judgment and order appealed from should be reversed.

Present — SMITH, P. J., BARKER and HAIGHT, JJ.†

Judgment and order reversed.

*Since reported, 18 Jones & Spencer, 431, and 14 Abbott's N. C., 333.—[REP.
† The balance of the cases decided at this term of the court will be reported in the next volume.—[REP.