### BALL *et ux.* v. BURLESON.

*(Supreme Court, Special Term, Monroe County. June, 1889.)*

HUSBAND AND WIFE—ACTIONS—JOINDER OF HUSBAND.

　　Laws N. Y. 1860, c. 90, as amended by Laws 1862, c. 172, authorizing a married woman to sue, in all matters relating to her separate property and for injury to her person or character, as if she were a *feme sole*, was repealed by Laws 1880, c. 245, § 1, subds. 36, 38. Code Civil Proc. § 450, provides that "in an action or special proceeding a married woman appears, prosecutes, or defends alone, or joined with other parties, as if she was single. It is not necessary or proper to join her husband with her as a party in any action or special proceeding affecting her separate

property." Section 1906, relating to actions for slander, imputing unchastity to a woman, provides that, if plaintiff is married, the damages recovered are her separate property. *Held*, that an action against a physician for negligent and unskillful treatment of a married woman is properly brought in the names of the husband and wife jointly.

Action by H. C. Ball and Rose E. Ball, his wife, against Dr. Burleson, for alleged negligence and want of skill in setting said Rose E. Ball's broken leg, whereby she was caused great suffering and was permanently injured. Defendant demurred on the ground that it was improper to join husband and wife as plaintiffs in such case, because the complaint showed a cause of action that was the separate property of said Rose E. Ball, and also on the ground that two causes of action were improperly joined.

*J. F. Parkhurst*, for plaintiffs. *John F. Little*, for defendant.

DAVY, J. The principal question raised by this demurrer is whether the action was properly brought by the husband and wife jointly to recover damages for personal injuries to the wife. Under the common law the husband was a necessary party, for the reason that the alleged control of interest in the claim was in him and the recovery was for his benefit, if he chose to reduce it to possession during his life-time. The marriage operated as an absolute gift in law to the husband of the goods and chattels and personal property of the wife. The husband and wife were treated as one person, as having but one will between them, and that will was moved and controlled by the husband. She could not make any contract or maintain an action in her individual name. Her husband must be a party in every action which she prosecuted or defended, and, when a judgment was recovered against them, an execution could be issued against the property of both. Schouler, Husb. & Wife, §§ 141, 142; *Bertles* v. *Neuman*, 92 N. Y. 152; *Mann* v. *Marsh*, 21 How. Pr. 372, 375. This was the general rule of the common law in this state before the first enactment in 1848, known as "The Married Woman's Act," which removed the disability so far as to enable them to acquire, own, and dispose of property the same as if unmarried; but that act did not give her the power to sue or be sued without joining her husband. Then followed the Acts of 1860, c. 90, as amended by chapter 172 of the Laws of 1862, which authorized and permitted a married woman to sue and be sued in all matters relating to her separate property, and to bring and maintain an action in her own name for damages against any person or body corporate, for an injury to her person or character, the same as if she were a *feme sole*. In no case prior to the statute of 1860 could a wife, in this state, sue alone for injuries to her person or character. At common law it was often necessary, however, to bring separate actions for recovery of the entire damage resulting from an injury to the person of the wife, in one of which the husband alone was plaintiff, and in the other the wife was joined. The husband, for example, was entitled to the loss of service of his wife, and for the expenses incurred in doctors and nurses in curing her of injuries; but, when damages were sought to be recovered for bodily pain suffered by the wife from such injuries to her person, she had to be joined with her husband as plaintiff in the action. By the provisions of that act the rule of the common law, so far as it related to actions for direct injuries to the wife, was changed so that the right to damages in such cases was transferred from the husband to the wife. And in cases arising between 1860 and 1880, the court held that a married woman might sue alone to recover damages for injuries to her person or character the same as if she were unmarried. The legislature in 1880 (chapter 245, § 1, subds. 36, 38, Laws 1880) repealed that part of the married woman's act authorizing her to bring and to maintain actions in her own name for injuries to her person and character, and I have not been able to find that any substitute was provided, except to a limited extent by section 1906 of the Code of Civil Pro-

cedure, which relates to actions of slander, imputing unchastity to a woman, and provides that if the plaintiff is married the damages recovered are her separate property.   So that, with this exception, the law concerning actions for direct injuries to the person or character of a woman is left as it was prior to 1860.

It is claimed, however, by the learned counsel for the defendant, that section 450 of the Code of Civil Procedure, taken in connection with section 1206, changes the rule.   Section 450 reads: "In an action or special proceeding a married woman appears, prosecutes, or defends alone, or joined with other parties, as if she was single.   It is not necessary or proper to join her husband with her as a party in any action or special proceeding affecting her separate property."   The second sentence of the above section was added in 1879.   It is a rule of law well settled that the statutes changing the common law must be strictly construed, and the common law must be held no further abrogated than the clear import of the language used in the statute absolutely requires.   The common-law relations, therefore, between husband and wife are swept away only by the express enactment of the legislature.   Statutes are not presumed to make any alterations in the common law further than the act expressly requires.   The courts in this state have held, in construing that provision of the married woman's act authorizing her to bring and maintain an action in her own name for damages to her person, that the services of the wife in the discharge of her domestic duties still belong to the husband, and in rendering such services she still bears to him the common-law relation, and, if injured or disabled from performing such services for her husband, the loss is his and not hers.   But when she is carrying on a separate business, or is laboring for another person, the value of her services belongs to her, and not to her husband.   *Filer* v. *Railroad Co.*, 49 N. Y. 47; *Coleman* v. *Burr*, 93 N. Y. 17, 28.   In the case of *Fitzgerald* v. *Quann*, 109 N. Y. 441, 447, 17 N. E. Rep. 354, PECKHAM, J., in referring to section 450 of the Code of Civil Procedure, says: "The section, as it stood before the amendment, certainly rendered it unnecessary to join the husband with the wife, in cases affecting her separate property; and, unless the effect of the amendment be to state those cases where such joining is unnecessary, leaving it necessary in all other cases, it is difficult, if not impossible, to give any sense or meaning to the amendment.   In our opinion such is and was intended to be the effect of the amendment, and, unless in cases affecting her separate property, a married woman should be sued with her husband."   *Mangam* v. *Peck*, 111 N. Y. 401, 18 N. E. Rep. 617.   The section of the Code referred to does not create a right of property, but simply provides for the enforcement of such rights as already exist.   It does not give a married woman the property right of a *feme sole*, but merely enables her to enforce those property rights which she has as a married woman in the same way as if she was unmarried.   Section 450 of the Code has not transferred this or any other property of the husband to the wife.   This position is made still clearer by the fact that, where any one slanders a woman by imputing unchastity, the legislature made an express provision that, in case the plaintiff was married, the damages recovered shall be her separate property.   The common law did the wife such great wrong that, as civilization advanced, it became so repugnant to common sense and justice that a wonderful revolution in public opinion took place in favor of the rights of married women.   Mississippi, in 1839, was the pioneer state which passed the first American statute on the subject. This was followed by the Acts of 1846 and 1848 in this state, and since that period statutes have been passed in nearly every state in the Union, conferring upon the wife the power to acquire and hold in her own right property, both real and personal.   While the acts in different states are by no means uniform in their provisions, yet they all have for their object the accomplishment of the same general purpose,—the protection of the married woman in her

property rights from the control of an unfortunate and profligate husband and his creditors. The simplicity and good sense of these laws has had a power-ful influence in moulding public opinion, not only in this country, but in Eng-land, in their favor; so much so, that in 1870 the English parliament was forced by public opinion to break the unyielding common-law fetters which had impeded the liberties and rights of the married woman in that country for centuries, and to pass an act pertaining to the powers and rights of mar-ried women very similar to ours. It is to be regretted that our own state, after having been one of the pioneers in legislating in the interest of mar-ried women, should have, either intentionally or by mistake, repealed that provision of the married woman's act which gave her sole right to sue for in-juries to her person or character. The legislature in this respect has taken a long step backwards into the old fossil foot-prints of feudalism. It has re-stored that discrimination between husband and wife that originated in the dark ages of the feudal system, when the husband maintained his authority by force, and when married women were treated by their husbands more like slaves than companions. In the most enlightened and polished ages of Roman jurisprudence the husband and wife were regarded as distinct persons, and capable of holding distinct and separate estates. The wife was comparatively free from all civil disabilities. She was alone responsible for her own debts. She was competent to sue and be sued on her own contracts. The repeal of that portion of chapter 172, Laws 1862, which I have referred to, is retroact-ive, and in my judgment it does not commend itself to the people of the state. I trust that this error may be remedied in time by subsequent legislation, but, until that is done, we must acquiesce in the law as it now exists. The stat-ute law is the will of the legislature, and not the courts, and courts can only interpret the intent of the legislature by the language expressed in the act.

I have therefore come to the conclusion that the husband in this case was a proper party to the action, and the defendant's demurrer must be overruled, and judgment thereon ordered for the plaintiffs, with leave, however, to the defendant, upon the payment of $10 costs, to withdraw his demurrer and an-swer the complaint.